This appeal is from an order granting both defendants' motions for summary judgment, holding that there is no genuine issue of material fact under either negligence or the Dram Shop Act. We affirm.
Defendant Mayer Electric hosted an open house and "New Products Show" on its premises, furnishing soft drinks, mixed drinks, and beer. Defendant Britling catered the show and provided the food, along *Page 734 
with soft drinks, bar supplies, and bartenders. Mayer Electric employees had been invited to attend the show, which was held from 5:00 p.m. to 9:00 p.m. Alphonso Wells, a Mayer Electric employee, "clocked in" on his regular job at 7:03 a.m. and "clocked out" at 7:11 p.m. Thereafter, he attended the show and allegedly became intoxicated from the beverages provided. Upon leaving Mayer Electric's premises, he drove his motor vehicle onto the "wrong side" of Interstate 59, striking plaintiff DeLoach, a police officer on a motorcycle, seriously injuring him.
DeLoach contended that since Mayer Electric and Britling are not in the business of selling liquor, beer, or any intoxicating beverages, and since Mayer Electric and Britling provided the beverages, both had violated the Dram Shop Act of Alabama, the violation of which proximately caused DeLoach's injuries. In addition, DeLoach brought a count against Mayer Electric and Britling based upon common law negligence for furnishing the alcoholic beverages to Wells.
Both Mayer Electric and Britling filed motions for summary judgment. The motions were granted.
The precise issues for our review are whether the Dram Shop Act, Code 1975, § 6-5-71 (a), applies in the fact situation presented, and whether DeLoach has a cause of action for common law negligence against Mayer Electric and Britling for disbursing alcohol to Wells.
The Dram Shop Act provides:
 "§ 6-5-71. Right of Action of wife, child, parent or other person for injury in consequence of illegal sale or disposition of liquor or beverages.
 "(a) Every wife, child, parent or other person who shall be injured in person, property or means of support by any intoxicated person or in consequence of the intoxication of any person shall have a right of action against any person who shall, by selling, giving or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained, as well as exemplary damages."
Code 1975, § 6-5-71 (a). DeLoach contends that the act is applicable because the alcohol furnished to Wells was furnished "contrary to the provisions of law,"[1] based upon a statutory analysis of §§ 28-3-260 (10) and 28-3-1 (16) of the 1975 Code, which provide:
"It shall be unlawful:
* * * * * *
 "(10) For any person, firm, corporation, partnership or association of persons, as defined in section 28-3-1, who has not been licensed so to do under the appropriate provisions of this chapter, to sell, offer for sale or have in possession for sale any liquor or malt or brewed beverages, as defined in section 28-3-1."
 "(16) SALE OR SELL. Any transfer of liquor or malt or brewed beverages for a consideration and any gift in connection with or as a part of a transfer of property other than liquor or malt or brewed beverages for a consideration."
DeLoach's contention is that Mayer Electric and Britling are not licensed to sell alcoholic beverages, that they "sold" alcoholic beverages to Wells because there was consideration flowing from Wells to Mayer and Britling in exchange for the beverages, that an unlicensed sale is illegal, and that there is therefore a prohibited act within the meaning of "contrary to the provisions of law" in the Dram Shop Act. DeLoach's claim, then, hinges upon the contention that there was a "sale" to Wells by Mayer Electric and Britling.
It is clear to us, and we so hold, that there was no "sale" to Wells within the meaning of § 28-3-1 (16) because there was no consideration present. DeLoach contends that there was consideration in that Wells, an employee of Mayer Electric, could be called into service if needed. We think such analysis reaches too far. *Page 735 
It is undisputed that Britling catered the show and provided the work force necessary to serve those attending the show, and that Wells had already "clocked out." It is also undisputed that Mayer Electric invited all its employees to attend the show. It was not mandatory. We therefore hold that there was no "sale" within the meaning of §§ 28-3-260 (10), -1 (16), and that, under the fact situation presented, the Dram Shop Act is not applicable.
DeLoach's remaining contention is that Alabama should recognize an action for common law negligence for disbursing alcohol to Wells, allegedly causing his intoxication and the resulting accident and injuries to DeLoach. In so contending, DeLoach recognizes that King v. Henkie, 80 Ala. 505 (1876), held that an action under common law negligence could not be maintained against one for disbursing alcohol. However, DeLoach submits that social attitudes and public policy have changed since King was decided, and that this court should change the law to meet society's change. We cannot agree.
The rule expressed in King is as viable today as when first expressed. In King, the Court held:
 "The death of the deceased was not `caused' so much by the wrongful act of the defendants in selling him whiskey, as by his own act in drinking it after being sold to him. The only wrongful act imputed to the defendants was the selling, or giving, as the case may be, of intoxicating liquors to the deceased while he was in a stupidly drunken condition, knowing that he was a man of intemperate habits. . . . But this was only the remote, not the proximate or intermediate, cause of the death of plaintiff's intestate. . . . Had it not been for the drinking of the liquor, after the sale, which was a secondary or intervening cause co-operating to produce the fatal result, and was the act of deceased, not of defendants, the sale itself would have proved entirely harmless. Hence it can not be said that the wrongful act of the defendants, in making sale of the liquor, caused the death of King; but rather his own act in drinking it. And this must be true, whatever the condition of his mind, or state of his intellect, and without regard to the question of any contributory negligence on his part.
80 Ala. at 510.
The majority of jurisdictions in this country do not recognize a common law cause of action for negligence in the distribution of alcohol. See Annotation, 8 A.L.R.3d 1412 (1966) and jurisdictions there listed. We do not choose, at this time, to depart from the rule expressed in King and followed by a majority of jurisdictions.
We conclude that the trial court was correct in granting Mayer Electric's and Britling's motions for summary judgment as to the counts in the complaint based upon the Dram Shop Act and common law negligence.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
[1] See § 6-5-71, supra.