**Kimberly K. CADY, Respondent,**

v.

**James Leslie COLEMAN, et al., Arthur, Chapman & Michaelson, P. A., Appellants,**

and

**Kimberly K. CADY, Respondent,**

v.

**ARTHUR, CHAPMAN & MICHAELSON, P. A., Appellant,**

and

**Bradford WETTERLIN, Respondent,**

v.

**James L. COLEMAN, Respondent,**

v.

**James L. COLEMAN, et al., Arthur, Chapman & Michaelson, P. A., Appellant.**

No. 81–582.

Supreme Court of Minnesota.

Feb. 12, 1982.

Howard S. Marker, Minneapolis, for Coleman.

Cragg & Bailly, Ltd., and J. W. Cragg, Minneapolis, for Arthur, Chapman & Michaelson, P. A.

Brian T. Carlson, Bloomington, for Cady, et al.

O'Neill, Goggins, Traxler & Zard and Norbert B. Traxler, New Prague, for Wetterlin.

AMDAHL, Chief Justice.

This is an appeal by the law firm of Arthur, Chapman & Michaelson from an order dated May 12, 1981, of the Scott County District Court, denying its motion for summary judgment dismissing it from a personal injury action.

The action arose from an accident that occurred at about 12:30 a. m. on June 26, 1979, when a car driven by James Coleman collided with a car driven by Patricia Macauley. Macauley was killed immediately; two passengers in her car, Kimberly Cady and Bradford Wetterlin, were seriously and permanently injured. Coleman was also injured.

Immediately before the accident, Coleman, a suit supervisor for the Home Insurance Company, had attended a golf outing sponsored by the Minneapolis Claims Association, another defendant in this action, at the Minnesota Valley Country Club. Home Insurance Company was a client of appellant Arthur, Chapman & Michaelson. Three shareholders of appellant, Lindsay Arthur, Jr., Ron Michaelson, and John Chapman, were present at the golf outing; two of them golfed in a foursome with Coleman. After golfing, they went to the club bar. Throughout the evening, Arthur, Chapman, and at least one other attorney who represented the Home Insurance Company bought drinks for Coleman. Coleman stated that he did not buy any drinks for himself that evening. By 10:30 p. m., Coleman began to appear intoxicated; never-

theless, Chapman bought at least one more drink for him. Coleman had drunk approximately eight "Rusty Nails" by 11:35 p. m.

About midnight, Chapman decided to get some coffee for Coleman. As he was talking to a waitress, Chapman saw Coleman leaving the bar. He caught up with him and offered him a ride home. Coleman refused; however, he accepted Chapman's offer to follow him home. Coleman, driving erratically, left the country club parking lot and turned the wrong way onto a one-way road, where he collided with Patricia Macauley's car. Coleman's blood alcohol content following the collision was .19.

An action was brought on behalf of the occupants of the Macauley car against the Minnesota Valley Country Club, Coleman, the Minneapolis Claims Association, Home Insurance Company, Chapman individually, and appellant. Respondents contended that appellant was liable to them under the Minnesota Civil Damages Act, Minn.Stat. § 340.95 (1980), on the ground that appellant "sold or bartered," rather than gave, liquor to Coleman. The district court denied appellant's motion for summary judgment, holding that the furnishing of liquor to Coleman could have been a barter, since appellant provided him with entertainment with the expectation that he would continue to refer business to the law firm. We reverse.

Two issues are raised on this appeal: (1) whether social hosts who barter or sell liquor to their guests may be liable under the Civil Damages Act; and (2) if so, whether the furnishing of liquor by a business or professional person to a client or a potential client constitutes a barter.

1. In *Ross v. Ross*, 294 Minn. 115, 200 N.W.2d 149 (1972), we extended the application of the Civil Damages Act to social providers of liquor. At that time, the Act provided in part:

Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against

*any person* who, by illegally selling, bartering *or giving* intoxicating liquors, caused the intoxication of such person, for all damages sustained; * * *.

Minn.Stat. § 340.95 (1970). We concluded that the use of the words "any person" was evidence of the legislature's intent to apply the act to social hosts. 294 Minn. at 121, 200 N.W.2d at 153. In 1977, in response to *Ross v. Ross,* the legislature amended section 340.95 by deleting the words "or giving." The words "any person" were retained. See Act of June 2, 1977, ch. 390, § 1, 1977 Minn. Laws 887 (amending Minn. Stat. § 340.95 (1976)). Respondent argues that the legislature's failure to change the words "any person" to something like "any commercial vendor" is evidence of its intent that the Act apply to anyone, including a social host, who illegally provides liquor *by sale or barter.*

■ We recently held in *Cole v. City of Spring Lake Park,* 314 N.W.2d 836 (Minn. 1982), that "the specific removal of the word 'giving' is legislative activity which we interpret here as intent to preempt a Civil Damages Act or common-law remedy against social hosts." Id. at 840. We hold in this case that the legislature intended to insulate social hosts from liability regardless of the terms under which they provide their guests with liquor. It is illogical to impose liability under the Act upon a social host who sells or barters liquor to a minor or an intoxicated person, but not upon one who gives it away. The argument that commercial vendors should be subject to liability because they profit by their sales and therefore should bear some of the risks created by their business does not apply with equal force to a social host, who is unlikely to make any profit even if he barters or sells liquor to guests. Moreover, it would be extremely difficult in a social setting to determine whether a barter or sale was either intended or consummated, and the results could be absurd in some cases. Would the Act apply, for example, if the host of a party accepted contributions from guests to pay for the liquor? Would a barter occur if guests were asked to bring food to a party where liquor was served?

The legislature's intent to restrict liability only to commercial vendors is sufficiently clear from its deletion from the Act of the word "giving." "Any person" who sells or barters liquor means a person in the business of providing liquor, and not a social host who happens to receive some consideration from his guests in return for drinks he provides.

■ 2. This case illustrates the difficulties that could arise if we accepted respondent's argument. Respondent contends that the liquor was provided not as a social gift, but bartered for past and future insurance defense business. We hold, however, that no barter took place because no consideration was given in exchange for appellant's liquor. While an obvious purpose of appellant's providing insurance company personnel with liquor and entertainment was to remain in the company's good graces in the hope that the company would continue to send appellant its insurance defense business, a bargained-for exchange, in the sense that appellant and Coleman were *trading* drinks for business, surely was never intended.

■ Consideration requires the voluntary assumption of an obligation by one party *on the condition* of an act or forebearance by the other. *Baehr v. Penn-O-Tex Oil Corp.,* 258 Minn. 533, 104 N.W.2d 661 (1960); *see* 1 A. Corbin, *Corbin on Contracts* § 116 (West 1963). If appellant's purchase of liquor for Coleman was not on the condition that Coleman send appellant more defense cases, and if Coleman's referring of his company's business to appellant was not on the condition that appellant entertain him, there was no bargained-for consideration and hence no sale or barter. Obviously, appellant wished to encourage a continuing relationship with the Home Insurance Company. It is difficult to see how appellant's providing liquor for the insurance company's representative could constitute consideration, however, since no claim was made that their business relationship was dependent upon appellant's entertaining Coleman, or vice versa.

The issue of what may constitute consideration for the purposes of dram shop liability was raised in *DeLoach v. Mayer Electric Supply Co.,* 378 So.2d 733 (Ala.1979). Defendant's employee had become intoxicated at an open house defendant held on its premises. After leaving, the employee caused an automobile accident in which the plaintiff was injured. The plaintiff contended that defendant was liable under the Alabama dram shop act for having illegally provided liquor to its employee "for consideration." The alleged "consideration" was the fact that the employee, who had clocked out, was nevertheless available to defendant if it needed him. *Id.* at 734. The court held that the mere possibility that the employee could be called into service did not constitute consideration. *Id.* In the instant case, appellant no more "bartered" liquor for insurance defense business than the employee in *DeLoach* provided his employer with the "consideration" of his presence in exchange for liquor.

Even if we were to find social hosts to be subject to liability under the Civil Damages Act for the illegal sale or barter of liquor, in this case we conclude as a matter of law that no sale or barter took place because there was no bargained-for exchange and therefore no consideration. This alone would be a sufficient basis for holding that appellant's motion for summary judgment should have been granted; however, because we have held that the statutory cause of action against social hosts "was eliminated with the word 'giving'", *Cole v. City of Spring Lake Park,* 314 N.W.2d 836, 840 (Minn.1982), respondents may not maintain their claim against appellants even if they could prove that a sale or barter had taken place.

Reversed.

KELLEY, J., took no part in the consideration or decision of this case.