**Paul Thomas SUMMERHAYS, as Administrator of the Estate of Thomas Paul Summerhays, Deceased, and Paul Thomas Summerhays, Individually, Appellants,**

v.

**James CLARK, Defendant,**

and

**Steven R. Kayser and Steven R. Kayser, Inc. d/b/a 4th Street Station, Appellees.**

No. 92–1361.

Supreme Court of Iowa.

Dec. 22, 1993.

Rehearing Denied Jan. 20, 1994.

As Corrected Jan. 21, 1994.

Frederick G. White, Waterloo, for appellants.

Gerry M. Rinden and Andrew M. Johnson of Wintroub, Rinden & Sens, Des Moines, for appellees.

NEUMAN, Justice.

This interlocutory appeal tests the liability of a restaurant and its owner for the tragic aftermath of a holiday party given for the establishment's employees. The district court found as a matter of law that the restaurant did not meet the "sold and served" requirement triggering liability under our dramshop statute, Iowa Code § 123.92 (1991), and that the owner, individually, was immune from liability as a social host under Iowa Code section 123.49(1)(a). We affirm.

Because the case reaches us on appeal from an order granting summary judgment, our task is to determine whether a genuine issue of fact exists and whether the law was applied correctly. *Brown v. Monticello State Bank*, 360 N.W.2d 81, 84 (Iowa 1984). "[I]f the conflict consists only of the legal consequences flowing from undisputed facts, or from the facts viewed most favorably toward the resisting party, summary judgment is proper." *Paul v. Ron Moore Oil Co.*, 487 N.W.2d 337, 337–38 (Iowa 1992). With these principles in mind, we relate the following undisputed facts from the record.

Defendant Steven R. Kayser, Inc. is an Iowa liquor licensee authorized to operate a Waterloo restaurant and bar known as 4th Street Station. Its owner and corporate president is defendant Steven R. Kayser. On the evening of January 8, 1990, Kayser hosted a belated holiday party at 4th Street Station for the establishment's employees and their guests. All food and beverages were supplied and paid for by the corporation, and employee attendance was voluntary. The restaurant was closed to the public for the event.

Defendant James Clark was employed by 4th Street Station as manager and bartender. He arrived at the party around 6 p.m. with his wife, Kathleen. Clark and two of Kayser's friends served drinks behind the open bar. Clark served himself six or seven beers; he served his wife approximately ten. Around 10 p.m., the Clarks left the party to pick up Kathleen's son, Thomas, who was staying at her parents' home in Waterloo. Because Kathleen was visibly intoxicated, Clark decided to drive. Clark, as it turns out, was also legally intoxicated.

The Clarks picked up Thomas and then proceeded to their home near Parkersburg.

During the ride, Thomas slept in the back seat of the vehicle. After traveling approximately twenty minutes, Clark suddenly lost control of the vehicle and drove into a ditch. Thomas was thrown from the vehicle and died from his injuries shortly after the accident.

Thomas's father, plaintiff Paul Summerhays, brought this wrongful death action against the defendants. The suit alleged the liability of Kayser, Inc. and Steven Kayser under the dramshop statute and the common-law doctrine of respondeat superior.[1] After answering, these defendants moved for summary judgment. They asserted that Kayser, Inc. could not be found liable, as a matter of law, because it did not *sell* and serve intoxicating beverages to Clark as required to prove liability under section 123.92; that no cause of action could be maintained under Iowa Code section 123.92 against Kayser, individually, because he is neither a liquor licensee nor permittee; and that Iowa Code section 123.49(1)(a) immunizes Kayser from liability as a social host. The district court entered judgment for defendants on these grounds. This appeal followed.

■ I. The scope and intent of our state's dramshop law has been a source of much debate in our opinions on the topic. Most often the court has divided over the extent to which the statute preempts common-law claims. *See, e.g., Eddy v. Casey's Gen. Store,* 485 N.W.2d 633, 639 (Iowa 1992) (dissent asserts preemption argument "specious") (Larson, J., dissenting); *Kelly v. Sinclair Oil Co.,* 476 N.W.2d 341, 356 (Iowa 1991) ("[T]his court has erred in applying preemption principles so broadly.") (Larson, J., dissenting); *Connolly v. Conlan,* 371 N.W.2d 832, 833 (Iowa 1985) (applying preemption doctrine to section 123.92 "does not square with the stated policy of the legislature") (Schultz, J., dissenting). This court has consistently decided, however, that Iowa Code section 123.92 provides the *exclusive* remedy against liquor licensees and permittees for losses related to the furnishing of alcohol to an intoxicated adult. *Eddy,* 485 N.W.2d at 636; *Slager v. HWA Corp.,* 435 N.W.2d 349, 352 (Iowa 1989); *Fuhrman v. Total Petroleum,*

*Inc.,* 398 N.W.2d 807, 809 (Iowa 1987); *Connolly,* 371 N.W.2d at 833; *Snyder v. Davenport,* 323 N.W.2d 225, 226 (Iowa 1982). Thus the district court correctly granted summary judgment for Kayser, Inc. on all claims *not* premised on section 123.92.

II. Summerhays' principal argument on appeal is that Kayser, Inc.'s action under this record brings it within the purview of section 123.92. The statute pertinently states:

Any person who is injured in person or property or means of support by an intoxicated person or resulting from the intoxication of a person, has a right of action for all damages actually sustained, severally or jointly, against any licensee or permittee, who *sold and served* any beer, wine, or intoxicating liquor to the intoxicated person when the licensee or permittee knew or should have known the person was intoxicated, or who *sold to and served* the person to a point where the licensee or permittee knew or should have known the person would become intoxicated.

Iowa Code § 123.92 (emphasis added). While conceding that Clark did not pay Kayser, Inc. for the alcohol that intoxicated him, Summerhays asserts that the record would support a factual argument that a "sale" nevertheless occurred. Thus, he argues, summary judgment for the defendant was improvidently granted and should be reversed. We cannot agree.

■ Summerhays' argument rests on the notion that the employee goodwill fostered by a holiday party constitutes a sufficient quid pro quo to qualify as consideration—and hence a "sale"—under the statute. He cites *State v. Fountain,* 183 Iowa 1159, 168 N.W. 285 (1918), to support his claim. *Fountain* is a prohibition era case in which this court held that a jury question was raised concerning the criminal culpability of an employer who kept alcohol on hand for his workers in the scavenger trade. *Id.* at 1164, 168 N.W. at 287. The law at the time criminalized the sale of liquor, but not "giving it away, without any consideration whatever." *Id.* at 1161–62, 168 N.W. at 286. Rejecting the criminal defendant's claim of philanthropy,

---

**1.** Summerhays' suit against Clark for negligence      is not involved in this appeal.

this court held that adequate consideration could be established by proof that the employer paid his employees a wage that reflected the cost of the whiskey furnished. *Id.* at 1164, 168 N.W. at 287.

We do not find *Fountain* persuasive on the question before us. The record is without support for any claim that Clark's (or any other employee-guest's) wages were reduced by the cost of alcohol consumed at the party. Nor does the record suggest that Clark would not have attended the party had free drinks and food not been provided.

Other courts have rejected the contention asserted by Summerhays and, we think, correctly so. In *Cady v. Coleman,* 315 N.W.2d 593 (Minn.1982), the Minnesota Supreme Court considered a "sold or bartered" argument made in a case involving attorneys who bought drinks at a golf outing for an insurance company representative with whom they had done substantial business. When the inebriated agent was later involved in an automobile accident, plaintiffs sued the lawyers, among others, under a Minnesota law that stated a cause of action against any person who caused intoxication by "illegally selling or *bartering* intoxicating liquors." *Id.* at 595 (emphasis added). Rejecting the plaintiffs' argument that the alcohol was not given, but bartered in consideration for past and future insurance defense business, the court stated:

> We hold, however, that no barter took place because no consideration was given in exchange for appellant's liquor. While an obvious purpose of appellant's providing insurance company personnel with liquor and entertainment was to remain in the company's good graces in the hope that the company would continue to send appellant its insurance defense business, a bargained-for exchange, in the sense that appellant and Coleman were *trading* drinks for business, surely was never intended.
>
> Consideration requires the voluntary assumption of an obligation by one party *on the condition* of an act or forbearance by the other. If appellant's purchase of liquor for Coleman was not on the condition that Coleman send appellant more defense cases, and if Coleman's referring of his

company's business to appellant was not on the condition that appellant entertain him, there was no bargained-for consideration and hence no sale or barter. Obviously, appellant wished to encourage a continuing relationship with the Home Insurance Company. It is difficult to see how appellant's providing liquor for the insurance company's representative could constitute consideration, however, since no claim was made that their business relationship was dependent upon appellant's entertaining Coleman, or vice versa.

*Id.* at 596 (citations omitted). Likewise, in *DeLoach v. Mayer Electric Supply Co.,* 378 So.2d 733 (Ala.1979), the court concluded that the mere willingness of an employee to be on hand to assist at an office party did not render the employee's subsequent overindulgence at the party sufficient consideration for his services to bring the employer within the ambit of Alabama's dramshop act. *Id.* at 734.

We believe the reasoning in *Cady* and *DeLoach* is sound. Both courts wisely recognized that it is difficult, if not impossible, to quantify the goodwill generated by gratuitous entertainment at employee parties and elsewhere. We are convinced that the argument Summerhays advances would hopelessly blur commonly understood distinctions between a gift, a wage, and a sale.

Our decision is fortified, we believe, by the legislature's amendment of the dramshop statute in 1986 to replace the words "sell *or give*" with the words "sold *and served.*" 1986 Iowa Acts ch. 1211, § 12 (emphasis added). We have previously interpreted this change as evidence of the legislature's intent to narrow the conduct for which a licensee may be held liable. *Paul,* 487 N.W.2d at 338. Reading the term "sold" to include a licensee's purely gratuitous undertakings would contradict that intent as well as the plain meaning of the statutory term. *Shafer v. Cocklin,* 504 N.W.2d 454, 455 (Iowa 1993). Wise social policy may dictate otherwise, but we are bound to adhere to the limits imposed by the legislature. *Fuhrman,* 398 N.W.2d at 809. The district court did not err in ruling, under this record, that Kayser, Inc. was entitled to judgment as a matter of law.

III. Summerhays' claim against Steven Kayser, individually, rested on alleged liability under Iowa Code sections 123.92 and 123.49, and on common-law negligence under the theory of respondeat superior.

By its terms, the dramshop statute extends liability only to liquor licensees and permittees. *See* Iowa Code § 123.92. Steven Kayser is neither a licensee nor a permittee. Hence the cause of action stated in section 123.92 does not attach to him.

Summerhays also seems to claim that Kayser, as an employee or agent of Kayser, Inc., bears responsibility for Clark's intoxication and subsequent conduct on a respondeat superior basis under this court's holding in *Thorp v. Casey's General Store, Inc.,* 446 N.W.2d 457, 464–65 (Iowa 1989). *Thorp* only interpreted section 123.49(1) as retaining liability for dramshop employees who "sell, dispense, or give" alcohol to an intoxicated person. *Id.* at 465. As already noted, no "selling" of alcohol occurred here. The record further establishes that the liquor was given by the corporation, not Kayser, and was dispensed by Clark to himself. The argument is, therefore, without merit.

The district court also ruled that a cause of action against Kayser could not be premised on Iowa Code section 123.49(1)(a) (1989). The statute provides:

> A person *other than a person required to hold a license or permit under this chapter* who dispenses or gives an alcoholic beverage, wine, or beer in violation of this subsection is not civilly liable to an injured person or the estate of a person for injuries inflicted on that person as a result of intoxication by the consumer of the alcoholic beverage, wine, or beer.

Iowa Code § 123.49(1)(a) (emphasis added). The statute, enacted in 1986, was intended to end the "social host" liability imposed by this court in *Clark v. Mincks,* 364 N.W.2d 226, 231 (Iowa 1985), thereby reinstating the common-law rule that consumption of alcohol, rather than the serving of it, is the proximate cause for injury inflicted on another by an intoxicated person. Iowa Code § 123.49(1)(b); *see Cowman v. Hansen,* 250 Iowa 358, 368, 92 N.W.2d 682, 687 (1958).

Through this statutory change, the legislature has plainly immunized Kayser from liability as a social host. The district court committed no error by entering judgment in his favor on all of plaintiff's claims.

**AFFIRMED.**

All Justices concur except LAVORATO and LARSON, JJ., who dissent and TERNUS, J., who takes no part.

LAVORATO, Justice (dissenting).

The majority rejects Summerhays' action against the licensee under Iowa Code section 123.92 because it believes that as a matter of law the furnishing of beer and liquor in this case did not constitute a sale. In doing so, the majority relies heavily on *Cady v. Coleman,* 315 N.W.2d 593 (Minn.1982). *Cady* is distinguishable because it involved a social host that was not a commercial vendor of alcohol. Like Iowa, Minnesota does not recognize common law actions against social hosts under its dramshop statute. *See Cole v. City of Spring Lake Park,* 314 N.W.2d 836 (Minn.1982).

The majority cites a passage from *Cady* in support of its conclusion that the furnishing of alcohol to employees and their guests by the *licensee* in this case did not constitute a sale for purposes of section 123.92. However, the following passage is found in an earlier part of the opinion in *Cady:*

> We hold in this case that the legislature intended to insulate social hosts from liability regardless of the terms under which they provide their guests with liquor. It is illogical to impose liability under the [Dram Shop] Act upon a social host who sells or barters liquor to a minor or an intoxicated person, but not upon one who gives it away. *The argument that commercial vendors should be subject to liability because they profit by their sales and therefore should bear some of the risks created by their business does not apply with equal force to a social host,* who is unlikely to make any profit even if he barters or sells liquor to guests. . . .

The legislature's intent to restrict liability only to commercial vendors is sufficient-

ly clear from its deletion from the [Dram Shop] Act of the word "giving." *"Any person" [in the Dram Shop Act] who sells or barters liquor means a person in the business of providing liquor, and not a social host who happens to receive some consideration from his guests in return for drinks he provides.*

*Cady,* 315 N.W.2d at 595–96.

My point is that the italicized language in the above passage could logically be extended to cover a licensee who uses its business premises and employees[1] for an employee Christmas party during which beer and liquor is served. During oral argument, the licensee's attorney candidly admitted that the result here might be different if the licensee furnished drinks "on the house" to its customers after business hours. I see no meaningful distinction between the two scenarios.

Under either of these scenarios, the licensee is still in the business of selling liquor and beer. The licensee does not change hats from a licensee to a social host merely because the establishment is closed. A fact finder could reasonably infer under either scenario that the licensee makes no immediate profit but hopes to profit from its "generosity" in the future because of employee or customer goodwill. In either case, the licensee expects a benefit in the form of such goodwill from furnishing the liquor and beer "gratuitously." I submit such an expectation is sufficient to constitute consideration for the beer and liquor and thereby brand the transactions under either scenario as a "sale" for purposes of section 123.92.

There are other facts to support this conclusion. The licensee in this case paid for the liquor and beer consumed on the establishment premises during the Christmas party. The licensee reported the amount of beer and liquor dispensed as sales of liquor and beer for sales tax purposes. All expenses for the party were treated as business expenses. Because the two employees who worked on the day of the party were on salary, their wages were likewise treated as business expenses.

These facts support the Summerhays' argument that the idea of a benevolent employer is contrary to economic principles. Benefits that employers may furnish employees are, economically speaking, not provided "free." Such benefits are a cost of doing business and so recognized and treated by employers. More specifically, employers and employees generally consider such benefits as wages. For example, any management and union negotiations regarding employee benefits like health insurance recognize this economic reality because they traditionally treat such benefits as part of the wage package.

Iowa Code section 123.1 sets out the following public policy with regard to the trafficking of liquor in Iowa:

> This chapter shall be cited as the "Iowa Alcoholic Beverage Control Act," and shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace, morals, and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose. It is declared to be public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, except as provided in this chapter.

The majority's restrictive interpretation given to the word "sale" in section 123.92 flies in the face of the statutory mandate that the provisions of Chapter 123 should be liberally construed to protect the safety of Iowa citizens. Such an interpretation does nothing to prevent a recurrence of the tragedy in this case—the death of an innocent child.

For all these reasons, I would hold that there is a material fact question on whether the furnishing of liquor and beer was a sale under section 123.92. I would therefore reverse and remand for further proceedings on this issue.

I also take issue with the majority's conclusion that Iowa Code section 123.49(1)(a) immunized the licensee in this case from

---

1. Steven R. Kayser and James Clark are employees of the licensee corporation. Kayser is also owner and president of the corporation. On the day of the party, both worked preparing for it. At the party, Clark was the principal bartender.

liability as a social host. Section 123.49(1)(a) and (b) provide:

1(a) A person *other than a person required to hold a license or permit under this chapter* who dispenses or gives an alcoholic beverage, wine, or beer in violation of this subsection is not civilly liable to an injured person or the estate of a person for injuries inflicted on that person as a result of intoxication by the consumer of the alcoholic beverage, wine or beer.

(b) The general assembly declares that this subsection shall be interpreted so that the holding of *Clark v. Mincks,* ... is abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, wine, or beer rather than the serving of alcoholic beverages, wine, or beer as the proximate cause of injury inflicted upon another by an intoxicated person.

The italicized language excludes all persons other than those required to hold a license or permit under Chapter 123. Clearly, by not including licensees in the exclusion, the intent of the statute is to provide for liability against licensees.

The majority is taking the position that the licensee here was—as a matter of law—a social host. I question this conclusion.

As I said earlier the licensee here is a commercial vendor of liquor and beer. The licensee was using its liquor establishment and two of its employees to put on the party. The licensee reported the amount of beer and liquor dispensed as sales for sales tax purposes. All expenses for the party were treated as business expenses. I think these undisputed facts raise a material fact question on whether the licensee was acting as a social host at the time and place in question. I would not hold as a matter of law that the licensee was a social host.

I would therefore also reverse and remand on this issue for further proceedings.

LARSON, J., joins this dissent.