**IN THE COURT OF APPEALS OF IOWA**

No. 16-0316
Filed December 21, 2016

**MICHELLE GORDEN,**
        Plaintiff-Appellant,

**vs.**

**MITCHELL ENTERPRISES, L.L.C. d/b/a "CHEERS",**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Crawford County, John D. Ackerman, Judge.


        The plaintiff appeals the district court's grant of summary judgment in favor of the defendants, dismissing the plaintiff's petition alleging dramshop liability.  **AFFIRMED.**


        Jessica A. Zupp and Jennifer M. Zupp of Zupp & Zupp Law Firm, P.C., Denison, for appellant.

        Thomas I. Henderson and S. Luke Craven of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

        Joel E. Fenton, Des Moines, for amicus curiae Iowa Association for Justice.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Michelle Gorden appeals from the district court's grant of summary judgment in favor of the defendants, dismissing her petition alleging dramshop liability.[1]  Gorden maintained that she was injured by Timothy Mitchell in an altercation after he was "sold and served" alcohol at the bar he owns, the appellee in this action, Mitchell Enterprises, L.L.C. ("Cheers").  The district court made the following findings of undisputed fact in ruling Mitchell was not "sold" alcohol by Cheers, as contemplated by Iowa Code section 123.92 (2013).

> Timothy Mitchell . . . is the sole owner of Mitchell Enterprises, L.L.C. d/b/a Cheers bar . . . in Dow City, Iowa.  On March 1, 2013, Mitchell was working as a bartender for a fish fry at Cheers.  After the service of food had completed, another employee, Amanda Nutt (Nutt), took over Mitchell's position as the bartender on-duty.  Mitchell ordered vodka waters with lime from Nutt, and Nutt served Mitchell.  Mitchell did not pay using cash, credit card, or debit card for the drinks provided that evening.  Mitchell has not "paid" for any alcoholic drinks or food he has consumed at Cheers since beginning operations.
>
> The alcohol Mitchell consumed on March 1, 2013, was from the inventory owned by Cheers, for which Cheers paid money.  The alcohol served to Mitchell was displayed and available to other customers for sale.  Cheers advertises the sale of alcohol through radio ads and other advertisements in the bar.  Employees will solicit sales from individuals inside the establishment, by asking if they want or need a drink.
>
> All employees of Cheers, other than Mitchell, were compensated for their services performed for the bar.  Cheers does not have a policy of providing free alcoholic drinks to employees after completion of a shift or to customers.  Additionally, Cheers' employees are not to consume alcohol while working.
>
> Mitchell has never received a paycheck for wages for working at the bar, but Mitchell has made draws on the Cheers account for personal expenses. The bank account for Cheers is in the name of Mitchell, DBA CHEERS.  Mitchell wrote checks from this account to pay for the bar's inventory.  Defendants' 2013 tax returns report that all alcohol consumed in 2013 at Cheers was

---

[1] The parties filed competing motions for summary judgment.  Gorden's motion was denied; Cheers' motion was granted.

sold, and [it] does not include a deduction for personal consumption. Allen Nepper is a practicing attorney who has prepared income tax returns since January 1971. Nepper's affidavit states a "consumption of inventory is a sale albeit no funds reached the cash register."

Gorden appeals, maintaining the district court erred in interpreting the meaning of "sold" and the proper interpretation shows there is at least a genuine issue of material fact whether Cheers sold Mitchell alcohol on the night in question.

**I. Background Proceedings.**

In March 2014, Gorden filed a petition alleging that approximately one year earlier, Cheers had sold and served alcohol to Timothy Mitchell when it was known or should have been known that Mitchell would become intoxicated. *See* Iowa Code § 123.92. She further alleged that Mitchell physically assaulted her afterward as a result of the intoxication.

Thereafter, Cheers filed a motion for summary judgment. In it, the bar asserted that although Cheers had served Mitchell alcohol on the night in question, it was undisputed it had not sold the alcohol to him, as Mitchell never paid for food or alcohol at the bar. Cheers asked the court to dismiss Gorden's petition. Gorden resisted the motion, asserting there were a number of ways the sale of the alcohol could be established. Following argument, the court granted Cheers' motion for summary judgment.[2]

---

[2] We limit our description of the proceedings to those that affect this appeal; in doing so, we leave out proceedings involving Gorden's claim against Mitchell individually for physical assault.

## II. Standard of Review.

"When resolving an appeal from a district court ruling on summary judgment motion requires us to resolve a legal question involving statutory interpretation, we review the district court ruling on the statutory interpretation question for correction of errors at law." *Homan v. Branstad*, ___ N.W.2d ___, ___, 2016 WL 6650114, at *7 (Iowa 2016). We view the record in the light most favorable to Gorden (the party opposing summary judgment). *See id.* at *6.

## III. Discussion.

"Iowa's dramshop statute provides a remedy against a licensee or permittee for injuries sustained as a result of the sale and service of alcohol to an intoxicated person." *Smith v. Shagnasty's Inc.*, 688 N.W.2d 67, 72 (Iowa 2004). "[B]efore dramshop liability may be imposed upon a permittee or a licensee, a plaintiff must prove, at a minimum, that an intoxicated person was both 'sold' *and* 'served' intoxicating liquor . . . ."[3] *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 346 (Iowa 1991), *abrogated on other grounds by Thompson v. Kaczinski*, 774 N.W.2d 829, 836 (Iowa 2009). The legislature's choice of the words "sold and served" in the 1986 amendment of the statute reflects an intent to narrow the conduct for which a dramshop may be held liable. *Summerhays v. Clark*, 509 N.W.2d 748, 751 (Iowa 1993). Before that amendment the statute imposed liability for

---

[3] The Dramshop Act provides, in pertinent part:

> Any person who is injured . . . by an intoxicated person . . . has a right of action for all damages . . . against any licensee or permittee . . . who sold and served any beer, wine, or intoxicating liquor to the intoxicated person when the licensee or permittee knew or should have known the person was intoxicated, or who sold to and served the person to a point where the licensee or permittee knew or should have known the person would become intoxicated.

Iowa Code § 123.92(1)(a).

giving away alcoholic beverages. *See, e.g.*, *Clark v. Mincks*, 364 N.W.2d 226, 231 (Iowa 1985). "Reading the term 'sold' to include a licensee's purely gratuitous undertakings would contradict [the legislature's] intent as well as the plain meaning of the statutory term." *Summerhays*, 590 N.W.2d at 751. "The dramshop statute is designed to 'place a hand of restraint' on those authorized to sell and serve intoxicating liquors." *Shagnasty's*, 688 N.W.2d at 72 (quoting *Atkins v. Baxter*, 423 N.W.2d 6, 9 (Iowa 1988)). We construe the statute liberally to discourage the selling of excess liquor. *Id.*

Here, Gorden does not dispute Cheers' claim that no money was exchanged for the drinks Mitchell received. Rather, Gorden suggests a number of other actions she believes fall within the definition of "sale" as contemplated by the Dramshop Act. *See* Iowa Code § 123.110 ("It shall not be necessary in every case to prove payment in order to prove a sale within the meaning and intent of this chapter."); *see also Hawthorne v. Estate of Krommenhoek*, No. 12-1455, 2013 WL 2637173, at *2 (Iowa Ct. App. June 12, 2013) ("The [dramshop] cases indicate that some type of consideration or detriment by the purchaser is required for a sale to have occurred."). Specifically, Gorden raises interpretations involving: (A) sale as defined by section 123.3(41), (B) sale by inference, (C) sale by pre-payment, (D) sale by barter, (E) sale by indirect payment, and (F) sales for tax purposes.

**A. Section 123.3(41).**

Gorden first urges us to hold that the statutory definition of "prohibited sale" is included within the meaning of "sold." Iowa Code section 123.3(41) states, "The prohibited 'sale' of alcoholic liquor, wine, or beer under this chapter

includes soliciting for sales, taking orders for sales, keeping or exposing for sale, delivery or other trafficking for a valuable consideration promised or obtained, and procuring or allowing procurement for any other person." The definition is to apply throughout chapter 123, entitled alcoholic beverage control, "unless the context otherwise requires." Iowa Code § 123.3.

At the time Gorden argued her case to the district court, the opinions issued in dramshop cases had not explicitly considered whether section 123.3(41) was applicable. Since then, our supreme court decided *Sanford v. Fillenwarth*, 863 N.W.2d 286, 290 (Iowa 2015). In *Sanford*, as here, the parties disagreed over the meaning of the word "sold" in the dramshop statute. 863 N.W.2d at 290. In its interpretation of the term, the supreme court considered the definition of prohibited sales before setting it aside because it did "not fully illuminate the meaning of a 'sale' within the dramshop statute." *Id.*

We do the same; we decline to broaden the definition of "sold" by including the actions provided in section 123.3(41).

**B. Sale by Inference.**

Gorden urges us to apply case law that has allowed parties to generate a fact question about whether alcohol was "sold" to the party in question by an inference of payment.

In *Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 148 (Iowa 2002), a casino facing dramshop liability argued the record failed to establish that any of its employees actually sold the intoxicated party alcoholic beverages. The court, in considering whether there was sufficient evidence to support dramshop liability and considering the record in the light most favorable to the plaintiffs, held that

even though the plaintiffs "did not produce at trial the actual server of the drink the [intoxicated party] consumed," the party's two companions testified they saw her ordering drinks from waitresses and then drinking them. *Horak*, 648 N.W.2d at 148. The court determined that was circumstantial evidence that casino employees "sold and served" the drinks. *Id.*

Similarly, in *Shagnasty's*, the plaintiff brought a dramshop liability suit against a bar after she was hit with a beer bottle by a patron who appeared to be inebriated. 688 N.W.2d at 70. The plaintiff grabbed hold of the apparently-drunk patron but eventually agreed to let go of her after the bouncers promised to hold her until police arrived. *Id.* at 71. By the time police arrived, the bouncers had let the patron "slip into the night," and she was never identified. *Id.* A waitress from the bar later made it known that the patron had been underage. *Id.* The district court granted the bar's motion for summary judgment, finding the plaintiff had failed to generate a genuine issue of material fact as to whether the bar had "sold and served" intoxicating liquor to the unidentified patron. *Id.* Our supreme court reversed, holding, "One can legitimately infer Shagnasty's 'sold and served' beer to [the patron]." *Id.* at 73. The court reaffirmed its previous holding that a plaintiff "need not produce the actual server or servers of the alcohol in order to prove a dramshop claim." *Id.* Additionally,

> A plaintiff may meet [the "sold and served" requirement with proof] that an establishment where alcohol is sold generally holds itself out as a place where persons are "served" in the ordinary sense of the word, *i.e.*, one providing premises where orders are taken, patrons are waited on, and drinks are supplied in open containers.

*Id.* at 73–74 (alteration in original) (quoting *Kelly*, 476 N.W.2d at 346).

Gorden maintains the same inference should apply here, as Mitchell was seen ordering drinks from a bartender and then drinking them in the bar, during normal service hours. The present facts are distinguishable from the above cases where the inference was applied. In those cases, either the server or the patron was unidentified, which prevented the plaintiff from being able to establish whether the drinks had been sold and served to the patron. The court allowed the inference based on the assumption that the patron received the drink by the normal means—by ordering the alcohol and then paying for it. In those cases, there was no reason to believe anything other than the normal course of business took place. But here we know that is not the case; it is undisputed Mitchell did not offer payment for the alcohol he consumed. Despite Gorden's urging, we cannot apply an inference in the face of known facts to the contrary.

**C. Sale by Pre-payment.**

Gorden maintains Mitchell did pay for the alcohol he imbibed, insofar as the checking account used to purchase the inventory for the bar from the distributor is in the company's name—specifically, Mitchell, DBA CHEERS. This same argument was made by the plaintiff in *Martin v. Wanda's, Inc.*, No. 99-1721, 2000 WL 1289149, at *3 (Iowa Ct. App. Sept. 13, 2000). In *Martin*, a panel of our court held:

> The [plaintiffs] contend a fact issue is generated on the consideration issue by [the owner's] testimony she paid for the bar's liquor before it was placed in inventory. This evidence is of no aid to [the plaintiffs] at this juncture. Wanda's, a corporation, owned the bar and paid for the liquor inventory. The issue before us is not whether there is evidence in the record tending to prove the corporation gave consideration for the alcohol served in its bar. Instead, the issue is whether there is evidence in the record tending to prove the corporation *sold* alcohol from its inventory to [the

owner]. Thus, we reject the [the plaintiffs'] suggestion evidence of consideration paid by the corporation for the alcohol is sufficient to generate a fact question here.

Gorden argues that either *Martin* was wrongly decided or the difference between a corporation, as the bar in *Martin* was, and a limited liability company, as is a party here, changes the reasoning. We disagree with both arguments. Rather, we agree with the district court, which "considered the analysis in [*Martin*] and the authorities relied upon therein, and finds such to be persuasive."

### D. Sale by Barter.

Gorden maintains that Mitchell provided consideration for the alcohol he drank because the bar bartered alcohol from the inventory in exchange for Mitchell's labor. *See Hawthorne*, 2013 WL 2637173, at *2 ("The [dramshop] cases indicate that some type of consideration or detriment by the purchaser is required for a sale to have occurred."). Gorden relies on Mitchell's deposition testimony that he does not receive a salary from Cheers[4] for her argument that the drinks he received were "exchanged with Cheers, at least in part, for his labor." *See Sanford*, 863 N.W.2d at 293 (finding the free alcohol provided to guests on a boat cruise was "part of" the consideration for the hotel stay, which the guests had paid for, and thus the alcohol on the cruise had been, albeit indirectly, "sold and served").

---

[4] We understand this to mean that Mitchell does not receive a specific amount of money at regular intervals. As Cheers' counsel stated at the hearing on the motion for summary judgment, "Judge, I would just say as far as consideration being that he received alcohol, quite obviously Mr. Mitchell made or pulled from the profits from the business. He wasn't just working there—somehow makes it—trying to make it sound like it was a drinking club. If he hadn't made a profit off it, he wouldn't have the business."

A similar argument was considered by our supreme court in *Summerhays*, where employees of a restaurant and bar received free alcohol at a holiday party held at the bar. 509 N.W.2d at 749. After the party, one of the employees was in a car accident, killing a passenger. *Id.* The plaintiffs sued the bar for dramshop liability, and our supreme court ultimately found the statute was not implicated because the employee had not been "sold and served" the alcohol. *Id.* at 752. The plaintiffs argued that even though the employee had not paid for the alcohol, a sale had taken place because consideration had been given in exchange for the alcohol. *Id.* at 750. The court rejected the argument, stating, "The record is without support for any claim that [the employee's] (or any other employee-guest's) wages were reduced by the cost of alcohol consumed at the party. Nor does the record suggest that [the employee] would not have attended the party had free drinks and food not been provided." *Id.* at 751. "Consideration requires the voluntary assumption of an obligation by one party *on the condition* of an act or forbearance by the other." *Id.* (quoting *Cady v. Coleman*, 315 N.W.2d 593, 596 (Minn. 1982)). The court noted that ruling otherwise "would hopelessly blur commonly understood distinctions between a gift, a wage, and a sale." *Id.*

In *Martin*, discussed above, a bar owner drank for free at the bar, and the bar had a policy of providing up to two free drinks per shift. 2000 WL 1289149, at *2. The plaintiffs maintained the bar considered the drinks to be "an employee benefit in addition to the regular pay," with the employees' labor acting as consideration. *Id.* Citing *Summerhays*, the panel of our court held the employees' labor was not consideration for the drinks because "[t]here is no indication in the record [the bar] provided the beverages as bargained-for

consideration. Nor does the record suggest [the owner] or any other employee would have refused to work had the free drinks not been provided by [the bar]." *Id.* The court concluded, "In short, we find no evidence in the record suggesting the free drinks amounted to anything more than a gratuitous undertaking for company employees." *Id.*

Although Gorden argues Mitchell worked in exchange for alcohol, there is no evidence in the record to suggest that Mitchell bargained for the free drinks or that he would otherwise not work at the establishment if he did not receive them. Without more, the drinks appear to be a purely gratuitous undertaking, which our supreme court has already ruled does not fall into the meaning of "sold."

**E. Sale by Indirect Payment.**

Gorden maintains that even though Mitchell did not physically exchange a payment for the drinks on the night in question, he indirectly paid by reducing the profits which Mitchell receives as sole owner of the bar.

In *Martin*, the court considered whether the likely reduction of the bar's profits due to the giving of free drinks to workers constituted a sale. *Id.* at 3. The court stated:

> Although [the plaintiffs] aptly observe [the bar's] profits was likely diminished by [the owner's] consumption of the beverages, this fact does not tend to prove [the owner] gave consideration for them. Indeed, the effect of [her] consumption on the corporation's profit (or loss) is the same if the liquor was given to her as a gratuity.

*Id.*

Gorden argues the facts here are distinguishable because, as Mitchell stated in his deposition, "[T]he L.L.C. itself doesn't have a personal bank account, but that's hard—it's kind of confusing. Because I am the L.L.C." Based

on this statement, Gorden contends there is a direct correlation between the amount of profits the bar makes and the amount of money Mitchell personally receives. In other words, Gorden's argument is that it is of no consequence that Mitchell did not take cash out of his pocket and put it in the register at the time he ordered the drinks because he "paid" later when he received reduced profits.

But again, in deciding whether the bar has "sold and served" alcohol, we look for a benefit the bar received for serving the alcohol. *See Sanford*, 863 N.W.2d at 292 ("[W]e conclude that the intent of the legislature under the dramshop statute was to capture all direct and indirect sales supported by consideration tangibly benefiting the dramshop."). Mitchell may characterize himself as personifying the dramshop in question, but the two are separate. Even if he personally received reduced profits from the bar later—a fact that is not established by the record before us—that does not establish a tangible benefit received by the bar for serving him.

**F. Sales for Tax Purposes.**

Gorden claims, with the affidavit of a tax attorney to back her up, that because Cheers served Mitchell alcohol without reducing on its tax returns the costs of goods it purchased by the amount attributable to Mitchell's personal use, the bar decreased its tax liability. By claiming Mitchell's consumption as a "sale," Cheers pays additional sales taxes, but it avoids income taxes. She asserts that this is a "tangible benefit" received by the dramshop.

Our supreme court requires us to take "a pragmatic approach to the meaning of the word 'sale' in the dramshop statute." *Id.* at 291. In doing so, the court has "chosen not to adopt the theory that a sale under the statute can be

established by the way a licensee or permittee may treat the service of alcohol beverages for accounting and tax purposes." *Id.*

### G. Public Policy.

Both Gorden and the amicus curiae who filed a brief supporting Gorden urge us to consider broader public policy implications. Gorden maintains that if we affirm the district court's summary dismissal of her claim, we will have created an "owner's exception" to the Dramshop Act. She argues that such an exception runs counter to the purpose of the statute, which is meant both to encourage responsible selling of alcohol by dramshops and to provide a means of relief for victims of alcohol-related incidents which would not otherwise exist.

While we have read the policy arguments made, in reaching our conclusion, we are bound by precedent. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("[I]t is the role of the supreme court to decide if case precedent should no longer be followed."); *see also Hawthorne*, 2013 WL 2637176, at *3 n.6 ("Plaintiffs offer a number of public policy arguments to support a broader interpretation and application of the statute. Whatever the relative merits of these arguments, they are for the legislature, not the court.").

### IV. Conclusion.

Having considered each of the plaintiff's arguments regarding the interpretation of "sold" within the Dramshop Act, we find no error in the district court's interpretation. We affirm the summary dismissal of the plaintiff's petition alleging dramshop liability because the undisputed facts establish Mitchell was not "sold and served" alcohol by the appellee bar.

**AFFIRMED.**