PHILLIP MALKAN

*v.*

THE CITY OF CHICAGO.

*Opinion filed October 24, 1905.*

1. DRAM-SHOPS—*right to regulate or prohibit sale of liquor is discretionary.* Legislative power conferred upon a city to regulate, license or prohibit the sale of intoxicating liquor leaves the matter of such regulation, license or prohibition purely a matter of discretion with the city.

2. SAME—*one accepting license consents to terms thereof.* One accepting a dram-shop license containing a provision for its revocation by the mayor at his discretion, accepts the terms so imposed and is bound thereby.

3. SAME—*what is not an arbitrary revocation of license.* Revocation of a dram-shop license by the mayor in the exercise of the discretion vested in him by the city ordinances and the terms of the license, upon the ground that he had determined, as a matter of fact, that the licensee was running two dram-shops under one license, is not arbitrary.

4. SAME—*license to keep a saloon does not cover all parts of building.* A city license to keep "a saloon" at a certain street number does not confer authority upon the licensee to run two saloons in the same building, one in the basement and one on the first floor, each place having a separate street door and no inside connection.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. F. A. SMITH, Judge, presiding.

This is an action of assumpsit, begun on October 30, 1900, in the circuit court of Cook county by the appellant against the appellee to recover the sum of $219.95, alleged to have been unlawfully exacted by appellee from appellant as a license fee for a certain basement saloon at 178 Quincy street in the city of Chicago from May 1, 1897, to October 8, 1897, by threatening to close up appellant's business at once, unless he paid said license fee, which fee is alleged to have been paid by appellant under duress; and also to recover damages, arising out of the alleged loss of money expended

in fitting up said saloon, and for alleged decrease in the value of appellant's lease of said premises by reason of the closing of the basement saloon, which was closed up shortly after the payment of said fee. The suit was originally brought against appellee, the city of Chicago, and one Joseph S. Martin, the city collector at that time. The declaration was demurred to, and subsequently amended on December 7, 1902. The plea of the general issue was filed by the defendant on December 9, 1902. The cause was tried before the court, and a jury. At the close of the evidence of the appellant, the plaintiff below, the trial judge, at the request of the defendant, gave an instruction in writing to the jury to find the issues for the defendant, Joseph S. Martin, but refused to give a similar instruction in writing to the jury to find the issues for the defendant, the city of Chicago. The latter instruction was refused, and exception was taken thereto by the city of Chicago. At the close of all the evidence, the defendant below, the city of Chicago, submitted to the court a written instruction to the jury to find the issues for defendant, the city of Chicago. This instruction was refused, and exception was taken to such refusal by the city. Thereupon, the trial judge, on the motion of the present appellant, plaintiff below, instructed the jury to find the issues for appellant, plaintiff below, and assess the latter's damages at the sum of $287.70, being said sum of $219.95, and interest thereon, whereupon defendant below, by its counsel, then and there duly excepted. Accordingly, the jury rendered a verdict on January 5, 1904, finding the issues for the defendant, Joseph S. Martin, and finding the issues for the appellant, and assessing the latter's damages at the sum of $287.70.

An appeal was taken to the Appellate Court. The Appellate Court has rendered a judgment, reversing the judgment of the circuit court without remanding the cause, and in its judgment making a finding of facts. The present appeal is prosecuted from such judgment of reversal entered by the Appellate Court, the latter court granting a certificate of

importance.   In the judgment of the Appellate Court entered on April 10, 1905, after ordering that the judgment of the circuit court "be reversed, annulled, set aside and wholly for nothing esteemed," the following finding of facts is made by the Appellate Court: "Appellee," (the then appellee in the Appellate Court is the present appellant in this court,) "in February, 1897, rented the two-story and basement building, known as No. 178 Quincy street in the city of Chicago, and fitted up two saloons therein; one in the basement and the other on the main floor.   Each of these saloons had its separate entrance from the street.   There was no way to go from one to the other of these saloons without going out into the street.   March 16, 1897, appellee took out a city license to keep a saloon at that number.   Immediately thereafter he operated and continued to run both of said saloons under this license.   He was the sole owner and manager of these saloons.   During the summer, or in the early fall, of 1897 appellee connected these saloons by an inside stairway.   In October, 1897, while appellee was still running both of these saloons, the city collector demanded of him that he pay a license fee from May 1, 1897, to the date of the demand, amounting to $219.95, due and arrear, as was alleged by said collector, because appellee during that period of time had sold liquors in said basement saloon without license. The city collector threatened to close both saloons, unless appellee paid said sum to the city collector."

FRANK M. Cox, for appellant.

MACLAY HOYNE, (EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The city contends in this case, that the appellant was running two saloons at No. 178 Quincy street in Chicago, the latter being a two-story and basement brick building,

under one license; that one of these saloons was in the basement, and the other on the first floor of the building; and that he had no right so to run the two saloons under one license, but should have taken out a separate license for each saloon, that is to say, a license for the saloon in the basement, and another license for the saloon on the first floor of the building above the basement. On the other hand, the contention of the appellant is, that the demand of the city for the payment of a double license, that is to say, for the payment of a license fee for the period from May 1, 1897, to October 8, 1897, for the saloon in the basement of the building, in addition to the license fee already paid for the saloon on the first floor of the building, was illegal; and that appellant, under the law, had a legal right to operate the two saloons under one license, so long as they were on the premises, known as No. 178 Quincy street, and so long as appellant remained the sole owner and manager thereof.

The question presented by the record, then, is: Did the city, in view of the statute and ordinances, have the right to exact from appellant two license fees, one for the saloon in the basement, and the other for the saloon on the first floor of the building, both saloons being located in the same building, and both used by appellant and under his sole ownership and management?

*First*—In the case at bar, the Appellate Court has rendered a judgment, reversing the trial court without remanding the cause, and has recited in its judgment the facts, as found by it. Under section 87 of the Practice act, its finding of the facts in controversy is different from the finding of the facts, made by the trial court. Where the Appellate Court thus reverses the judgment of the trial court, and makes a finding of the facts in its judgment, such judgment is final and conclusive, so far as the Supreme Court is concerned, as to all matters of fact in controversy. "The decision of the Appellate Court being conclusive on the questions of fact, we cannot review them on appeal." (*Hancock* v.

*Singer Manf. Co.* 174 Ill. 503; *Williams* v. *Forbes,* 114 id.
167; *Schwartz* v. *Supreme Court of Honor,* 194 id. 344).
Here, the Appellate Court has found, as matter of fact, that
the appellant fitted up two saloons in the two-story and base-
ment building, known as 178 Quincy street, one in the base-
ment, and the other on the main floor.   It has also found, as
a matter of fact, that each of these saloons had its separate
entrance from the street, and that there was no way to go
from one to the other of these saloons without going into the
street.   It appears that the saloon on the first floor, and that
in the basement, were connected some time in the summer
or early fall of 1897 by an inside stairway, but it nowhere
appears that this inside stairway existed during the period
beginning on May 1, 1897, for which the payment was re-
quired of appellant as back license for the basement saloon.
Section 1178 of the city ordinances, introduced in evidence,
provides that the license year shall be divided into three
periods, the first being from May 1 to August 30 inclusive,
the second from August 31 to December 30 inclusive, and
the third from December 31 to April 30 inclusive.   That ap-
pellant had fitted up and was operating two saloons, instead
of one, in the building in question is a fact found by the Ap-
pellate Court; and its finding in regard thereto is conclusive
upon this court.

*Second*—In *Sanders & Son* v. *Town Council,* 50 Ga. 178,
it was held that the question, whether two rooms in a particu-
lar house, in which it is proposed to sell spirituous liquors,
are in truth two distinct places, is a question of fact; and,
in that case, the Supreme Court of Georgia said: "It is not
clear to us that in this case there is not an effort to get per-
mission to set up two liquor shops under one license.   These
two rooms, under the admitted facts, are so situated as, in
a very fair sense, to make two different places.   They open
on different streets, there is no communication inside be-
tween them, and they are on different stories.   *   *   *   We
think it was no abuse of the exercise of the sound judgment

of the council to conclude that each was a distinct place; and that the fact of one firm being the owner of both did not alter the case. How much further, when the business should be opened, this distinctiveness would go, is tolerably evident. Perhaps, they are to be visited by different classes of people, sell at different prices, and different quantities of the same named liquor, opened at different hours, and have entirely different manners, customs and practices. How far the admitted facts make these two rooms different places the council has determined, as a question of fact. We see nothing in the case to justify the conclusion that this decision is an abuse of power."

Clause 46 of section 1 of article 5 of the Illinois act, relating to cities and villages, confers upon the city council in cities the power "to license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor, the license not to extend beyond the municipal year, in which it shall be granted, and to determine the amount to be paid for such license: * * * *Provided, further,* that in granting licenses such corporate authorities shall comply with whatever general law of the State may be in force relative to the granting of licenses." Where the legislature confers upon a city power to regulate, license and prohibit the sale of intoxicating liquor, it is a matter purely discretionary with the city, whether or not it will wholly prohibit such sale, or license and regulate the traffic in it.

Section 1180 of the city ordinances, introduced in evidence, provides that any license granted thereunder by the city may be revoked upon written notice by the mayor, whenever it shall appear to his satisfaction, that the party so licensed shall have violated any provision of any ordinance of the city council relating to intoxicating liquors, or any condition of the bond aforesaid, and that, upon complaint to him by two or more persons, that any place licensed as a saloon is a resort of disreputable persons, the mayor shall at once cause an investigation to be made as to such complaint, and

if found to be true he shall forthwith revoke the license issued to any person or persons to keep such saloon; and, upon report to the mayor by the police department that any saloon is a resort of disreputable persons, the mayor shall at once revoke the license of the keeper of such saloon. The license, issued to the appellant, contained the provision, that "this license, with all the rights under it, is subject to revocation at the discretion of the mayor, and this license, with all the rights under it, shall terminate absolutely upon the notice of said revocation being left at the bar, and the person, to whom it is issued, shall stand in the same position as if he had not taken out any license." Appellant accepted his license with knowledge, that the ordinance of the city provided for the revocation of the same in the manner stated, and also accepted the license with the provision in it that it was subject to revocation at the discretion of the mayor. By thus accepting the license, he assented to its terms and conditions. The mayor, upon investigation, decided, as a question of fact, that the appellant was running two saloons instead of one under one license, and we are not prepared to say that, as he determined the question of fact in the manner stated, there was anything arbitrary in the act of revoking appellant's license. (*Schwuchow* v. *City of Chicago,* 68 Ill. 444; *Wiggins* v. *City of Chicago,* 68 id. 372).

But whether or not the question of fact whether liquor was sold by the appellant in two places instead of one under one license, may be determined by the mayor, or whether it is a question of fact to be determined by the court, or a jury acting under the instruction of the court, in either case the question of fact has here been determined adversely to the appellant. In *State* v. *Fredericks,* 16 Mo. 383, it was said by the Supreme Court of Missouri: "There was no dispute about the sale of intoxicating liquors. The only point was whether they were sold at one or two places, and, therefore, the instructions were worded in regard to this point only. Whether there was but one or two places was a matter of

fact for the finding of the jury under proper instructions. They found there were two places, and I think very correctly. The instructions, given properly, put the question in issue before them, and the one refused was not calculated to aid or assist them in arriving at a more correct conclusion."

Here, the Appellate Court, differing from the trial court, has found as a matter of fact, that there were two saloons, instead of one. Indeed, the appellant in his evidence speaks of the saloon in the basement, and of the saloon on the first floor of the building, as being two saloons. He says: "I opened both the basement saloon and the street-floor saloon at the same time, and continued to operate them until October 8, 1897." He also says: "My saloon on the first floor of 178 Quincy street, and the saloon in the basement, both had entrances on Quincy street."

*Third*—The fact being, then, that the appellant was actually running two saloons under one license at 178 Quincy street, one in the basement, and the other on the first floor of the building, the question is whether there was anything in the license, given him by the city, which justified such conduct. His license is in evidence, and begins as follows: "By authority of the city of Chicago, license is hereby given to Phillip Malkan to keep a saloon or grocery at 178 Quincy street in the city of Chicago, and to sell, barter, give away or deliver wines and other liquors, whether malt, vinous or spirituous, in quantities less than one gallon, in the place above designated, from the date hereof, * * * bonds having been filed pursuant to the laws of the State of Illinois and the ordinances of the city of Chicago, in such cases made and provided, to be subject to such ordinances of the said city of Chicago, as now or hereafter may be in force, and the laws of said State, now or hereafter in force, in regard to the sale of wines and liquors," etc. License was thus given to appellant to keep a saloon or grocery at 178 Quincy street. The license was not to keep two saloons at that place. Therefore, under the terms of his license, as compared with the

facts as proven, he was operating one of the saloons without a license.

Counsel for appellant, however, insists that, when the statute, known as the Dram-shop act, and the ordinances of the city confer the right to keep a saloon at a building or house, the right is thereby conferred to keep any number of saloons in any number of rooms, provided all of the same are in that one building. Section 1 of the Dram-shop act thus defines dram-shop: "A dram-shop is a place where spirituous or vinous or malt liquors are retailed by less quantity than one gallon." (2 Starr & Curt. Ann. Stat.—2d ed.— p. 1587). It is said that, under the facts of the present case, the place, where appellant had a right to retail liquors, was not a room in the building, known as 178 Quincy street, but the whole of the building at 178 Quincy street. The language, however, of the license is "a saloon." In *Schwuchow* v. *City of Chicago, supra,* this court, speaking through the late Mr. Justice WALKER, said (p. 447) : "The license was to keep a saloon or grocery, and this latter term has generally been used by the General Assembly to designate a place where liquors are retailed to be drunk—and that is the general meaning applied to the word." That is to say, a saloon or grocery is the place within the meaning of the law, where liquor may be sold, and not necessarily the building in which the saloon or grocery is located. Webster defines a saloon as, "a large public room or parlor;" and he also defines it as follows: "Popularly a public room for specific uses; especially a bar-room or grog-shop; as, a drinking saloon," etc. In other words, the popular idea, associated with the word "saloon," is that it is a room, rather than a building with several rooms. Webster also defines "dram-shop" as "a shop or bar-room where spirits are sold by the dram."

The license, issued to appellant, provides that no concert, exhibition, ball, dance or play shall be given or performed "in the same room where the liquors are sold," not in the building where liquors are sold. It is not necessary for us

to decide whether, if the basement saloon and the saloon on the first floor of the building, occupied by appellant, had been connected by a stairway during the period, for which the license fee was exacted, they might be regarded as one saloon instead of two, because the facts as found here show that, during the period in question, they were not so connected. And not only so, but appellant had in each place a separate bar, a separate set of attendants, a separate stock of liquors, etc. He had on each floor a complete outfit of utensils and equipment for saloon purposes. Each floor had a separate entrance opening from the street, and on each floor appellant catered to a different class of customers.

His license also provides that the notice of revocation, which the mayor is authorized to give, shall be left "at the bar," and not "at the bars." The license also quotes a part of the city ordinance, which provides that the licensee shall cause such license to be posted "on some conspicuous part of the room or bar, kept or used for such purpose." The intention, by this phraseology, was evidently to designate one room or bar kept for the purpose of selling liquor, and not several rooms or bars. Section 1175 of one of the city ordinances, introduced in evidence, provides for the issuance by the mayor of licenses "for the keeping of dram-shops;" and also provides that on Sundays the licensee shall keep closed "all doors opening out upon any street from the bar or room where such dram-shop is to be kept." Here, the dram-shop is spoken of as being kept in a bar or room, and not in a building where there are several bars or rooms. Section 1176 of one of the ordinances, introduced in evidence, provides that the licensee shall not permit any liquor "to be sold or served in such dram-shop or saloon by any female, unless," etc. Here, the reference is not only to one dram-shop and one saloon, but the words "dram-shop" and "saloon" are used interchangeably as meaning the same thing. Section 1180 of the ordinances as introduced, which relates to the revocation of the license by the mayor, and which has been

above quoted, speaks of "any place licensed as a saloon,"
thus clearly indicating that the place to be licensed is one
saloon, and not a building in which a saloon is located. The
same section also provides that as to "any saloon," which is
a resort of disreputable persons, the mayor shall at once re-
voke "the license of the keeper of such saloon," using the
singular and speaking of one saloon.   In section 7 of the
Dram-shop act, (2 Starr & Curt. Ann. Stat.—2d ed.—
p. 1592), rooms and cellars are spoken of as "places" where
liquor is sold.   It cannot, therefore, be said that, when ap-
pellant was authorized to keep a saloon at 178 Quincy street,
the whole building was the place where he had a right to
sell liquor; but the room, where he had his bar and ran his
saloon, was the place where he sold liquor within the mean-
ing of "place," as used in the statute and city ordinances.
In 17 American and English Encyclopedia of Law (2d ed.
p. 237,) it is said: "One license will not authorize the per-
son or persons licensed to conduct the business in more than
one place.   A license is necessary for each place, in which the
business is conducted." (*State* v. *Walker,* 16 Me. 241; *Com-
monwealth* v. *Estabrook,* 10 Pick. 293). In *Thomas* v. *Arie,*
122 Iowa, 538, the Supreme Court of Iowa said: "The
only question presented for our determination is whether a
person, having paid but one tax and having but one license,
may keep for sale and sell intoxicating liquors in two dif-
ferent and wholly separate rooms in the same building.   We
are clearly of the opinion that such question must be an-
swered in the negative.   To hold otherwise would certainly
violate not only the spirit of the law, but, we think, the let-
ter of the law.   Section 2432 of the code provides that 'every
person,   *   *   *   maintaining a place where intoxicating
liquors are sold or kept with intent to sell, shall pay an
annual tax,' etc.   It must be manifest from our statement
of the facts, that the defendant is maintaining two places,
each independent of the other in every material sense neces-
sary to be considered.   The mere fact, that by his license he

217—31

is authorized to carry on business in the building mentioned cannot be construed to confer the right on defendant to cut such building up into separate rooms, the number to be limited only by the capacity of the building, or the extent of the premises, and in each maintain an independent place for the sale of liquors." The Iowa case last mentioned seems to be on all-fours with the case at bar, and the doctrine of it commends itself to our approval.

Indeed, there is nothing anywhere in the case to show that the city or its officials, when they granted the license to appellant to keep a saloon at 178 Quincy street, knew that he had a lease of the whole building. It appears from his evidence that he did have a lease of the whole building, including the basement, and the two floors above the basement, but whether or not he communicated this fact to the city authorities, when he obtained his license, does not appear. In a large city like Chicago, where there are immense buildings in the business district, it cannot be assumed that a man, who takes out a license to keep a saloon at a certain number, intends to open any number of saloons in the building, where such number is found.

Counsel for appellant relies upon several cases in other States, which seem to hold views contrary to those here expressed. One of these cases is *City of St. Louis* v. *Gerardi*, 90 Mo. 640. The Missouri case is a case where the proprietor of a hotel was licensed to keep a dram-shop; and that case holds that, where a dram-shop is kept at a place designated in the license, the mere fact of the licensee erecting more than one bar at such place does not constitute a carrying on of business at more than one place, where the bars are directly connected by doorways on the same floor of a hotel, and are accessible to guests without going out of the hotel. There, the bars were kept on the ground floor of the hotel, and screened off by partitions, having direct and immediate connection by doorways, all of which were accessible to the guests without going out of the hotel, and all of which

bars were located on the premises, occupied for hotel purposes, and part of the Planters House, which was one building and one place. There, the main business of the licensee was that of running a hotel, and the keeping of the bars was merely incidental to the keeping of the hotel, but the facts are not similar to the facts in this case, where the license was to keep "a saloon," that is, one saloon at one place. Moreover, the question to be determined involves the construction of language in the Chicago city ordinances, and in appellant's license, and in the Illinois Dram-shop act. The case of *Courtwright* v. *Common Council*, 96 Mich. 290, was also a case, where bars were operated in a hotel, and the decision follows the Missouri case already referred to.

For the reasons above stated, we are of the opinion that the judgment of the Appellate Court is right; and it is accordingly affirmed.   .   *Judgment affirmed.*