# IN THE COURT OF APPEALS OF IOWA

No. 20-1638
Filed September 22, 2021

**IN THE MATTER OF THE GUARDIANSHIP OF J.M.,**
**Minor Child,**

**R.P.,**
　　Petitioner-Appellee,
**vs.**

**A.M.,**
　　Respondent-Appellant.
_____

　　　　Appeal from the Iowa District Court for Polk County, William A. Price, District Associate Judge.

　　　　The adoptive mother of the child appeals the juvenile court's ruling granting the establishment of a guardianship for the child. **REVERSED AND REMANDED.**

　　　　Amy K. Davis of Babich Goldman, P.C., Des Moines, for appellant.

　　　　Andrea M. Flanagan of Flanagan Law Group, PLLC, Des Moines, for appellee.

　　　　Heard by Mullins, P.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

The child in these guardianship proceedings was born in 2005. After the Iowa Department of Human Services (DHS) became involved with the child's family due to domestic violence and drug abuse in the home, the child was placed with her maternal grandmother (A.M.). In 2008, the parental rights of the child's parents were terminated, and A.M. adopted the child.

R.P. is the biological mother of the child.[1] Despite the termination of her parental rights, R.P. continued to have a relationship with the child. This continuation of the relationship was with A.M.'s knowledge and blessing. In fact, for significant periods after the adoption, R.P. lived in the same home with the child and A.M. The child knows R.P. as her biological mother, and, even after the termination of parental rights and adoption, the child continues to call R.P. "mom" and call A.M. "gaga" or "grandma."

R.P. continued to struggle getting her life in order until 2012. In 2012, R.P. successfully completed drug treatment. She also moved out of A.M.'s house permanently after meeting and marrying her current husband. R.P. has continued to maintain a relationship with the child since moving out permanently. R.P. and her husband are productive adults. They are gainfully employed and have shown a long period of stability.

In April 2020, when the child was fifteen years old, an altercation occurred between the child and A.M. After being told she could not leave the home due to COVID precautions, the child became angry and an argument ensued during

---

[1] Due to the adoption of the child by R.P.'s mother, R.P. is now legally the child's half-sister.

which A.M. slapped the child in the face and threatened to throw her down the stairs. A.M. called R.P. to take the child to R.P.'s home so there could be a separation period to cool down. R.P. came and got the child.

The next day, R.P. and the child retrieved the child's belongings from A.M.'s home without notice to A.M. That night, R.P. caught the child drinking alcohol in R.P.'s home with the child's adult cousin, who was also residing in the home. R.P. called the police to have the child taken to a youth emergency-services shelter. The shelter would not take the child without a parent or guardian's permission. As R.P. was not legally the child's parent or guardian, the police turned to A.M. to give such permission. A.M. gave permission, and the child was placed at the shelter.

R.P. and A.M. then worked together to start the process to have the child civilly committed. Before they could obtain a commitment order, however, the child ran away from the shelter. An order to pick up the child was issued. Once she was found, she was taken to a hospital and held for seventy-two hours. Testing revealed marijuana in her system. A.M. picked the child up following her hospital stay. The child was adamant that she wanted to live with R.P., so A.M. allowed her to live at R.P.'s house. Soon after, R.P. began sending text messages suggesting she was now ready to parent the child and A.M. should essentially step aside. When A.M. did not immediately respond, R.P. expressed an intention to hire an attorney. Less than a month later, R.P. filed her petition to start this involuntary guardianship proceeding.

After the guardianship proceeding was filed, A.M., through counsel, demanded the child's return. R.P. acquiesced, and the child returned to A.M.'s house in mid-June. After returning to A.M.'s, the child ran away again. She was

gone for nearly a week. Contact was eventually made with the child, and she agreed to return so long as she could live with R.P. R.P. and A.M., through counsel, agreed the child could live with R.P. temporarily until things could be sorted out. Once the agreement was made, the child came out of hiding and began living with R.P., where she remained through the final hearing in this case. Following that hearing, the juvenile court granted the application for an involuntary guardianship and named R.P. as the child's guardian. A.M. appeals that ruling.

## I. Legislative Amendments and Standard of Review

In 2019, our legislature amended the statutory scheme governing guardianships for minors. The amendments removed all provisions for such guardianships from the Iowa Probate Code (Iowa Code chapter 633) and replaced them with different provisions in newly created Iowa Code chapter 232D. *See* 2019 Iowa Acts ch. 56, 57. The changes apply to all guardianships of minors established or pending on or after January 1, 2020, *see id.* ch. 56, § 45; ch. 57, § 44, so they apply here.

The legislative amendments have put us in uncharted water in determining the standard of review of cases addressing the establishment of guardianships for minors. Before the amendments, while acknowledging the case law "continues to be muddy," our cases generally held the appropriate standard of review was for errors at law, not de novo. *In re Guardianship of C.R.*, No. 14-1039, 2015 WL 576385, at *1 (Iowa Ct. App. Feb. 11, 2015); *see also In re Guardianship of Evans*, No. 16-2192, 2017 WL 4570438, at *2 (Iowa Ct. App. Oct. 11, 2017). However, the foundation for these holdings was Iowa Code sections 633.33 and 633.555, which stated actions for the involuntary appointment of guardians are triable as

law actions. Iowa Code §§ 633.33 (2019) (stating actions for "the involuntary appointment of guardians" shall be "triable as law actions"), 633.555 (stating the action for establishment of a guardianship "shall be tried as a law action"); *Evans*, 2017 WL 4570438, at *2 (citing Iowa Code section 633.33 (before the 2019 amendments) in concluding actions for the involuntary appointment of a guardian are at law and thus the standard of review is for correction of errors at law); *C.R.*, 2015 WL 576385, at *1 (citing Iowa Code sections 633.33 and 633.555 (before the 2019 amendments) in concluding actions for the establishment of a guardianship are law actions and thus the standard of review is for errors at law, not de novo). Since the 2019 amendments, guardianships of minors are no longer governed by chapter 633, so sections 633.33 and 633.555[2] no longer control such actions.

With this removal of the statutory underpinnings of our prior cases establishing the standard of review, such cases are no longer controlling. Instead, we look to the new statutory home for guardianships of minors—Iowa Code chapter 232D. Unfortunately, chapter 232D is silent on the topic of the nature of the proceedings or the standard of review. As a result, we are on our own to determine whether proceedings for establishment of a guardianship for a minor are legal or equitable. To do that, "we look to the pleadings, relief sought, and nature of the case." *Dix v. Casey's Gen. Stores, Inc.*, 961 N.W.2d 671, 680 (Iowa 2021) (quoting *Hedlund v. State*, 930 N.W.2d 707, 718 (Iowa 2019)).

---

[2] After the 2019 amendments, Iowa Code section 633.555 no longer references actions for the establishment of guardianships being law actions, but section 633.33 remains intact and unchanged. Iowa Code chapter 633 continues to apply to guardianships of adults. *See* Iowa Code § 633.52 et seq. (2020).

Looking at those factors, we start with the pleadings. In her petition, R.P. alleges she has been serving as de facto guardian and A.M. has shown a lack of consistent participation in the child's life. As for relief sought, the only relief sought in the pleadings or at trial was to establish a guardianship and name R.P. as guardian for the child. As for the nature of the case, the only issue raised in the case was to ask the court to determine whether a guardianship should be established and name R.P. as guardian. Resolution of that issue involves making a determination whether R.P. should be given authority to do such things as take custody of the child, establish the child's permanent residence, consent to medical treatment for the child, arrange for the provision of the child's education, consent to professional services for the child, apply for benefits for the child, consent to the withholding or withdrawal of life-sustaining procedures from the child, establish the residence of the child outside the state, consent to the marriage of the child, and consent to the emancipation of the child. *See* Iowa Code § 232D.401(3), (4) (listing the powers of an appointed guardian).

Given the equitable nature of the relief sought and the circumstances at issue in this proceeding coupled with the legislative amendments that removed the directive that such an action is one at law, we find this to be an equitable action. *See Suit in Equity*, Black's Law Dictionary (11th ed. 2019) ("A civil suit stating an equitable claim and asking for an exclusively equitable remedy."); *Equitable Remedy,* Black's Law Dictionary ("A remedy, usu[ally] a nonmonetary one such as an injunction or specific performance, obtained when available legal remedies,

usu[ally] monetary damages, cannot adequately redress the injury.").[3]  As a result, our review is de novo.  *Woods v. Charles Gabus Ford, Inc.*, 962 N.W.2d 1, 5 (Iowa 2021).  With de novo review, we are deferential to the district court's factual findings but are not bound by them, and we make our own legal conclusions with no deference to the district court's conclusions of law.  *Id.*[4]

## II.     Issues Presented and Discussion

A.M. asserts three claims: (A) reversal is required because the juvenile court failed to make required factual findings under Iowa Code section 232D.204(3) that a child-in-need-of-assistance (CINA) proceeding is not appropriate; (B) R.P. was required to prove all elements of both section 232D.204(1) and (2) to prevail; and (C) the juvenile court erred in concluding R.P. proved the elements for establishment of a guardianship under section 232D.204(1).

---

[3] We are mindful of the fact the juvenile court ruled on objections during the hearing, which is one "hallmark of a law trial."  *Dix*, 961 N.W.2d at 680.  However, this does not persuade us this case was tried as a law action.  There were few evidentiary rulings excluding evidence, and the record is sufficient to allow us to determine that we agree with those rulings.  *See Faraj v. Faraj*, No. 19-1260, 2020 WL 1887951, at *1 (Iowa Ct. App. Apr. 15, 2020) ("Even when the district court rules on objections, when there are few evidentiary rulings excluding evidence and the record is sufficient to allow the reviewing court to determine it does not disagree with the evidentiary rulings, the case can still be considered to be heard in equity." (citing *Sille v. Shaffer*, 297 N.W.2d 379, 380–81 (Iowa 1980))); *see also Dix*, 961 N.W.2d at 680 (finding the case to be tried in equity despite the district court ruling on objections throughout the trial).

[4] Even if this were an action at law and we applied the correction-of-errors-at-law standard of review that governed this type of case before the 2019 amendments, we would reach the same conclusion, as we disagree with the juvenile court's conclusions of law as it relates to R.P. meeting her burden of proof under section 232D.204(1), as discussed later in this opinion.

The relevant portions of the statute at issue read:

1. The court may appoint a guardian for a minor without the consent of the parent or parents having legal custody of the minor if the court finds by clear and convincing evidence all of the following:

a. There is a person serving as a de facto guardian of the minor.

b. There has been a demonstrated lack of consistent parental participation in the life of the minor by the parent. In determining whether a parent has demonstrated a lack of consistent participation in the minor's life, the court may consider all of the following:

(1) The intent of the parent in placing the custody, care, and supervision of the minor with the person petitioning as a de facto guardian and the facts and circumstances regarding such placement.

(2) The amount of communication and visitation of the parent with the minor during the alleged de facto guardianship.

(3) Any refusal of the parent to comply with conditions for retaining custody of the minor set forth in any previous court orders.

2. The court may appoint a guardian for a minor without the consent of the parent or parents having legal custody of the minor if the court finds by clear and convincing evidence all of the following:

a. No parent having legal custody of the minor is willing or able to exercise the power the court will grant to the guardian if the court appoints a guardian.

b. Appointment of a guardian for the minor is in the best interest of the minor.

3. Prior to granting a petition for guardianship, the court shall consider whether the filing of a child in need of assistance petition is appropriate under section 232.87. If the court determines a child in need of assistance petition is not appropriate, the court shall make findings of why a child in need of assistance petition is not appropriate.

## A.      The Requirements of Iowa Code Section 232D.204(3)

In its ruling, the juvenile court did not mention having considered whether the filing of a CINA petition is appropriate and made no findings of why a CINA proceeding is not appropriate, but the court still established a guardianship.[5]  A.M.

---

[5] The juvenile court cited section 232D.204(3) and summarized its contents.  This suggests the court was aware of the section's requirements.  Despite this apparent

contends section 232D.204(3) requires such consideration and findings before the juvenile court could establish a guardianship. We agree. The language in section 232D.204(3) is plain and its meaning is clear, so we need not search for meaning beyond the express terms of the statute.[6] *See In re Est. of Franken*, 944 N.W.2d 853, 859–60 (Iowa 2020). By its plain and clear language, section 232D.204(3) requires the juvenile court to consider the appropriateness of a CINA proceeding "prior to granting a petition for guardianship." The juvenile court did not do this. The question then becomes what remedy is appropriate to fix this error. Do we remand for findings by the juvenile court? Do we remand for a new hearing? Do we make a determination ourselves on de novo review? We need not answer this question here, as we find reversal is required on the merits, but we caution trial judges to comply with the requirements of section 232D.204(3) when determining whether to establish a guardianship for a minor.

### B. Proof of Both Subsection 232D.204(1) and (2)

The juvenile court determined a guardianship should be established because the elements of section 232D.204(1) were met.[7] A.M. responds by

---

awareness, the court provided no analysis or findings about the propriety of a CINA proceeding.

[6] R.P. does not claim the statute is ambiguous or is anything less than plain and clear. Rather, she argues the juvenile court's ruling shows the court considered the propriety of CINA proceedings and provided factual findings of why a CINA proceeding was not appropriate. Having read the ruling, we are not persuaded any such consideration or findings are contained in it, so we reject R.P.'s argument.

[7] To be precise, the juvenile court did not expressly state that its findings that a guardianship should be established were based on section 232D.204(1). However, given that the only elements discussed by the juvenile court were those set forth in section 232D.204(1), we conclude that is the only subsection relied upon by the court.

arguing that, even if R.P. proved the elements of section 232D.204(1)—a point A.M. contests—R.P. is not entitled to prevail because she must prove all elements in both section 232D.204(1) and (2).

We reject A.M.'s interpretation for two reasons based on principles of statutory interpretation. First, her interpretation requires us to read section 232D.204(1) and (2) as if there were an "and" between the two subsections. No such "and" exists. We do not interpret a statute in a way that adds words to it. *State v. Alvarado*, 875 N.W.2d 713, 720 (Iowa 2016).

Second, we avoid reading statutes in a way that make any part of it redundant. *Petition of Chapman*, 890 N.W.2d 853, 857 (Iowa 2017). Here, to adopt A.M.'s interpretation of the statute would make part of the statute redundant. The introductory sentence in section 232D.204(1) is identical to the introductory sentence in section 232D.204(2). If, as A.M. posits, R.P. had to prove both elements of both subsections, what purpose is served by the repetition of the introductory sentence? We discern no purpose in such repetition. If the legislature intended to require proof of all four elements, the legislature could simply state the introductory sentence once and then list all four elements rather than creating two subsections with two elements each and then repeating the same introductory sentence. Because the legislature chose to draft sections 232D.204(1) and (2) as it did, we conclude some other interpretation was intended. That interpretation is that the two subsections set forth alternative methods of proving the need for establishment of a guardianship. In other words, a petitioner can meet the petitioner's burden by proving either the elements in section 232D.204(1) or the

elements in section 232D.204(2). Under this interpretation, there is no redundancy.

For these two reasons, we reject A.M.'s claim that proof of the elements of both subsections is required. As a result, if R.P. proved only the elements of section 232D.204(1), as the juvenile court found, then we must affirm.

### C. Proof of Elements Under Iowa Code Section 232D.204(1)

A.M. contends the juvenile court erred in concluding R.P. had met her burden of establishing both elements of section 232D.204(1). As noted, the statute requires R.P. to present clear and convincing proof both that (a) there is a person serving as a de facto guardian of the minor, and (b) there has been a demonstrated lack of consistent parental participation in the life of the minor by the parent. Iowa Code § 232D.204(1).

As to the first element, the statute defines "guardian" as "a person appointed by the court to have custody of a minor." *Id.* § 232D.102(5). It does not define "de facto guardian" or "de facto." When a statute does not define a term, "we look to precedent, similar statutes, dictionaries, and common usage to define the term." *Sanford v. Fillenwarth*, 863 N.W.2d 286, 289 (Iowa 2015). While we find no helpful definition of "de facto guardian" from those sources, "de facto" means "[a]ctual; existing in fact; having effect though not formally recognized." *De facto*, Black's Law Dictionary (11th ed. 2019). Combining these definitions, we conclude a "de facto guardian" under section 232D.204(1)(a) is a person who is serving as a custodian of a child as if appointed by a court to do so, but who does not have a formal court order granting such authority.

A.M. insists the court erred in finding that R.P. was acting as a de facto guardian for the child. We agree. While the child was living with R.P. for the five-month period between filing and final hearing with A.M.'s permission, such permission was given under duress. A.M. enlisted R.P.'s help to de-escalate a volatile situation. Soon after, R.P. and the child started acting in concert to convert the temporary help R.P. had been asked to give into a permanent situation. A.M. resisted those efforts, but when the child was returned to A.M., the child ran away from home and was missing for nearly a week. She only agreed to return so long as she could live with R.P. A.M. was left with the no-win choice of allowing the child to remain in a potentially dangerous situation on the run or agree to allow her to live with R.P. until the case could be sorted out in court. A.M. chose the better of these no-win options to protect the child, but that choice can hardly be described as voluntary or done with intent to relinquish custody.

In addition, during the short period the case was pending and the child was living with R.P., R.P. was not serving as a de facto guardian by acting as a custodian as if appointed by the court to do so. R.P. could not sign the child up for school in a different district, and she relied on the healthcare A.M. provided for the child. For day-to-day tasks, R.P. did fulfill the custodian roles of providing a residence, providing food, setting house rules, imposing discipline, and enforcing expectations. However, those duties were performed for only a short time. The statute does not impose a time requirement to consider someone a "de facto guardian," and neither do we. Even so, we find the brevity of the period under the circumstances of this case defeats any claim R.P. was serving as a de facto guardian. The child was living with A.M. before discovering that R.P. could have

an avenue for regaining custody, at which time the child threatened to run away if forced to return to A.M. This was not a situation in which the legal guardian essentially relinquished custody to another individual.

A.M. further contends there was no "demonstrated lack of consistent parental participation in the life of the minor" as required under 232D.204(1)(b). Again, we agree. Iowa Code section 232D.102(4) defines "demonstrated lack of consistent parental participation" as:

> the refusal of a parent to comply with duties and responsibilities imposed upon a parent by the parent-child relationship, including but not limited to providing the minor with necessary food, clothing, shelter, health care, education, and other care and supervision necessary for the minor's physical, mental, and emotional health and development.

In determining whether that element has been met, the court may consider:

> (1) The intent of the parent in placing the custody, care, and supervision of the minor with the person petitioning as a de facto guardian and the facts and circumstances regarding such placement.
> (2) The amount of communication and visitation of the parent with the minor during the alleged de facto guardianship.
> (3) Any refusal of the parent to comply with conditions for retaining custody of the minor set forth in any previous court orders.

Iowa Code § 232D.204(1)(b)(1)–(3).

Upon examination of the listed statutory considerations and the circumstances, we conclude there was no "demonstrated lack of consistent parental participation." We particularly note there was no evidence A.M. intended to place custody, care, and supervision of the child with R.P. on anything approaching a permanent basis. *See id.* § 232D.204(1)(b)(1). In fact, the evidence was to the contrary. This whole process started because things got out of control

in dealing with the problems associated with a rebellious teenager, and A.M. sought help temporarily. We do not condone how A.M. handled the situation at first, but we do commend her for relying on her support system in asking for help once things got out of control. *See In re Guardianship of Sams*, 256 N.W.2d 570, 573 (Iowa 1977) ("Our cases have emphasized that parents should be encouraged in time of need to look for help in caring for their children without risking loss of custody."). We will not penalize her for seeking help from R.P. Nor do we look negatively on A.M. for agreeing to allow the child to live with R.P. during the four-month period between when the child ran away from A.M.'s house and the final hearing for the previously mentioned reasons.

In terms of A.M.'s communication with the child during the time she lived with R.P. while this case was pending, the parties differ on the amount of communication that took place. The child and R.P. both contend A.M. attempted minimal contact with the child while she was living with R.P. A.M. contends she tried to contact the child, but R.P. had taken the child's phone away and was not allowing A.M. much contact with the child through R.P.'s phone. The juvenile court found R.P. and the child to be more credible on this matter, and we find no reason to disagree. However, we find it important to note that this was during this court action where the child had made clear she wanted to live with R.P. and not A.M. While we conclude A.M. could have made more effort to communicate with the child, we do not find the limited communication during such a short period should be given such weight as to tip the scales in favor of finding clear and convincing evidence of a "demonstrated lack of consistent parental participation in the life of the [child]" under section 232D.204(1)(b).

**III.    Conclusion**

We hold the court erred in finding R.P. established the elements of section 232D.204(1) by clear and convincing evidence.  Evidence is clear and convincing when there "are no serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence*." In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).  The child was permitted time with R.P., including overnights, before this action.  However, at no time before the argument between the child and A.M. and the child's later runaways was R.P. in a custodial role over the child.  A.M. continuously acted as the child's parent.  The child was only permitted to reside with R.P. temporarily right after the altercation and later only because of the child's threats to again run away from A.M.'s home.  Further, there was insufficient evidence supporting a finding that A.M. showed a lack of parental participation. A.M. was less involved in the child's life because the child demanded to live with R.P. until the court action was concluded.

There is not clear and convincing evidence that there was a de facto guardianship and that there was a lack of consistent parental participation.  For these reasons, we reverse the juvenile court's decision and remand for dismissal of the petition.

**REVERSED AND REMANDED.**